USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/4/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
GEOFFREY VARGA, et al., :
                      Plaintiffs, :
: 13 Civ. 08743 (LGS)
         -against- :
: ORDER AND OPINION
MCGRAW HILL FINANCIAL, INC., et al., :
:
                      Defendants. :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Geoffrey Varga and Mark Longbottom ("Plaintiffs"), as Joint Official Liquidators of Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. and Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. (together, the "Overseas Funds") seek to remand this action to state court, asserting that this Court lacks subject matter jurisdiction because no substantial federal question is implicated by their state law claim ("Motion"). For the reasons below, the Motion is granted and the case is remanded to the Supreme Court of the State of New York.

I.    BACKGROUND

Plaintiffs allege that the three foremost credit-rating agencies in the United States engaged in widespread fraud by misrepresenting the objectivity and accuracy of their ratings. At issue is whether Plaintiffs' claim of fraud should be adjudicated in New York state court, where it was brought, or in federal court, where the case is currently pending as a result of Defendants' removal pursuant to 28 U.S.C. §§ 1441 and 1446.

Defendants are McGraw Hill Financial, Inc. and its subsidiary, Standard & Poor's Financial Services LLC (together, "S&P"); Moody's Corporation and its subsidiaries, Moody's Investors Service, Inc. and Moody's Investors Service Limited (together, "Moody's"); and Fitch Group, Inc., and its subsidiaries, Fitch Ratings, Inc. and Fitch Ratings Limited (together, "Fitch")

(collectively, the "Rating Agencies" or "Defendants").  Defendants' business involves evaluating the creditworthiness of financial products, and each Rating Agency has developed its own rating scale to accomplish that purpose.  S&P and Fitch use a rating scale ranging from "AAA," which represents the highest quality, lowest risk security, to "D," representing the lowest quality, highest risk security.  Moody's uses a similar scale, with "Aaa" representing the highest quality, lowest risk security, and "C" representing the lowest quality, highest risk security.  The Rating Agencies are compensated under what is commonly known as the "issuer pays" model.  Under that model, the Rating Agencies charge the issuers of financial products a fee that corresponds to the complexity and size of the product being rated.

Each of the Defendants has been granted the status of "nationally recognized statistical rating organization" ("NRSRO") by the Securities & Exchange Commission.  To obtain (and subsequently maintain) that status, federal law—specifically, the Credit Rating Agency Reform Act of 2006 ("CRARA"), 15 U.S.C. § 78o-7, *et seq.*, and its implementing regulations—requires NRSROs to demonstrate that their ratings are objective and that they have implemented "policies and procedures . . . to address and manage any conflicts of interest . . . ."  *Id.* § 78o-7(h)(1).  To that end, each of the Ratings Agencies has adopted a code of conduct[1] that purports to ensure independence, transparency and objectivity in ratings.

Plaintiffs are the Official Joint Liquidators of the Overseas Funds, currently in liquidation proceedings before the Grand Court of the Cayman Islands.  The Overseas Funds are invested in "Master Funds," through which all trading activity takes place.  Plaintiffs' claim in this action is asserted on behalf of the Overseas Funds and derivatively on behalf of the Master Funds.

---

[1] The S&P Code of Practices and Procedures was initially issued in September 2004 and was updated with the adoption of "Standard & Poor's Rating Services Code of Conduct" in October 2005.  The "Moody's Code" was adopted in June 2005 and Fitch's code was adopted in April 2005.

The Overseas Funds, through the Master Funds, are invested in structured finance securities, including residential mortgage-backed securities ("RMBS") and collateralized debt obligations ("CDOs"). The Funds are invested only in "high-grade" securities—that is, securities that were rated between AAA and AA- or the equivalent by Defendants. Plaintiffs assert that the Funds relied heavily on the ratings assigned by Defendants in selecting their investments, in large part because the Rating Agencies had access to information about the assets underlying the CDOs and RMBS that was not accessible to the greater public, and possessed unique tools and expertise for analyzing that information.

Plaintiffs' claim in this case centers on their allegation that Defendants misrepresented the risk and quality of the securities at issue, the currency and accuracy of their models and Defendants' own objectivity and independence. Plaintiffs contend that Defendants' ratings were motivated primarily by their own financial interests, leading them to manipulate their models and issue inaccurate ratings in order to capture market share and greater profits under the issuer-pays model. According to Plaintiffs, the Funds' reliance on inaccurate ratings led the Funds to invest in subprime securities that eventually lost all of their value, leading to the collapse of the Funds and the present liquidation proceedings. Plaintiffs' complaint asserts one cause of action— common law fraud under New York law. For relief, Plaintiffs seek both compensatory and punitive damages.

## II. STANDARD

The removal statute entitles a party to remove from state court "[a]ny civil action . . . of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441. Congress has granted district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action may "arise" under federal law within

3

the meaning of § 1331 in one of two ways.  First, and in the "vast bulk" of cases, a suit arises under federal law where federal law creates the cause of action.  *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013).  Second, and relevant here, a case may arise under federal law, even where no federal cause of action is asserted, where state law claims "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  This form of "'arising under jurisdiction'" "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues . . . ." *Id.*

Whether a substantial federal question is implicated by state law claims is assessed on the basis of the inquiry articulated by the Supreme Court in *Grable*, according to which "jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 133 S. Ct. at 1065 (summarizing *Grable* elements).  All four requirements must be satisfied in order for a federal court to have jurisdiction.  *Id.*

The existence of a substantial federal question is "determined by reference to the 'well-pleaded complaint.'"  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  Under the artful pleading doctrine, however, a plaintiff may not "avoid[ ] removal by framing in terms of state law a complaint the real nature of [which] is federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in the complaint."  *Marcus v. AT&T Corp.*, 138 F.3d 46, 55 (2d Cir. 1998) (second alteration in original) (internal quotation marks omitted).  In addition, a federal defense is not sufficient to confer jurisdiction on a district court under *Grable*.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *New York v.*

*Shinnecock Indian Nation*, 686 F.3d 133, 138-40 (2d Cir. 2012).

"[F]ederal courts construe the removal statute narrowly, resolving any doubts against removability."  *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).  The burden to establish federal jurisdiction lies with the removing party.  *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57-58 (2d Cir. 2006).

## III.   DISCUSSION

The federal courts lack jurisdiction over this action under the standard enunciated in *Grable* because a federal issue is not "necessarily raised" by the Complaint's state law fraud claim.

To succeed on a claim for fraud under New York law, a plaintiff must establish "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury."  *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (alterations in original) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76 (N.Y. 1996)).  The Complaint asserts that Defendants misrepresented their objectivity and the accuracy of their ratings, and that the Funds detrimentally relied upon those misrepresentations when purchasing securities.  No interpretation of federal law is required to assess whether Defendants did or did not engage in such misrepresentations, or whether Plaintiffs relied on those misrepresentations and suffered financial loss in doing so.

In contending otherwise, Defendants assert that resolution of Plaintiffs' claim will require construction of federal law because CRARA both authorizes the issuer-pays model that allegedly

5

incentivized Defendants to make misrepresentations and requires the Rating Agencies to adopt policies that ensure their objectivity and independence.  Therefore, according to Defendants, an assessment of whether or not the Rating Agencies "did in fact adhere to their assertions of independence and objectivity" will require an interpretation of CRARA.

This argument is incorrect for three reasons.  First, it recasts Plaintiffs' claim as an allegation that the Rating Agencies failed to comply with federal law, when in fact Plaintiff's claim is a claim of misrepresentation.  Plaintiffs chose not to assert claims under federal law, and the fact that they "*could* have brought federal . . . claims based on the factual allegations contained in the complaint is not sufficient to convert the state law claims into federal questions." *Glazer Capital Mgmt., LP v. Elec. Clearing House, Inc.*, 672 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (emphasis in original).  Second, because the sole claim is one for misrepresentation, CRARA is only incidental to that claim; "nothing in CRARA says that the SEC defines the truth or falsity of statements made about the independence of [a Rating Agency's] credit rating process . . . ." *Illinois v. McGraw-Hill Cos., Inc.*, No. 13 Civ. 1725, 2013 WL 1874279, at *4 (N.D. Ill. May 2, 2013).  This statement holds true regardless of whether some of the alleged misrepresentations were made in federally-mandated documents such as the Agencies' respective codes of conduct.  *Accord Sung v. Wasserstein*, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006) ("[T]hat the [allegedly false] statements were made in a federally required document does not change the inquiry [into] whether, standing alone, they were false or misleading . . . under state law.").  Third, whether or not Defendants' conduct was authorized or even required by CRARA is simply a defense to their allegedly unlawful actions.  A defense that arises under federal law does not confer federal subject matter jurisdiction over a state law claim.  *Caterpillar*, 482 U.S. at 393.

The case law Defendants rely on for their argument that "federal jurisdiction exists for disputes regarding compliance with rules required by the federal securities laws" does not compel a different conclusion.  In each of those cases, the plaintiffs asserted state law claims predicated on violations of federal law or violations of obligations rooted exclusively in federal law.  In *D'Alessio v. N.Y. Stock Exch.*, *Inc.* 258 F.3d 93 (2d Cir. 2001), for example, the Second Circuit affirmed the district court's dismissal of a motion to remand a case that had been removed to federal court, where the "gravamen" of the plaintiff's state law tort claims against the New York Stock Exchange was "that [defendants] conspired to violate the federal securities laws . . . and failed to perform [their] statutory duty, created under federal law." *Id.* at 101.  To resolve those claims "require[d] a court to construe federal securities laws and evaluate the scope of the NYSE's duties, as defined under the Exchange Act and the regulations and rules thereto, in enforcing and monitoring a member's compliance with those laws." *Id.* at 101-02.

The court in *In re Facebook, Inc.*, also relied upon by Defendants, denied a motion to remand the case to state court.  922 F. Supp. 2d 475 (S.D.N.Y. 2013).  In that case, the plaintiff asserted a state law claim for negligence arising out of NASDAQ's system failure during the initial public offering of Facebook. *Id.* at 481.  The court concluded that resolution of the negligence claim would require an examination of "what duties a national securities exchange owes to members of the investing public," and because the answer to that question was found exclusively in federal law, the court held that a substantial federal question was presented by the claim. *Id.* at 483-85; *see, e.g.*, *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998) (holding that while the plaintiffs' "theories are posited as state law claims, they are founded on the defendants' conduct in suspending trading and delisting the offering, the propriety of which must be *exclusively determined by federal law*.") (emphasis

7

added).

Here, in contrast, Defendants are subject to obligations—and plaintiffs are the holders of rights—that exist independently of federal law. As one court in this district reasoned in a case with similar facts, "[t]he right plaintiffs say they wish to vindicate is the right not to be lied to in a fashion that causes reliance and results in financial injury, a right possessed by all New York residents, not the narrower right not to be lied to in connection with a securities transaction regulated by federal law." *Fin. and Trading, Ltd. v. Rhodia S.A.*, 04 Civ. 6083, 2004 WL 2754862, at *6 (S.D.N.Y. Nov. 30, 2004); *accord In re Standard & Poor's Rating Agency Litig.*, 13 MD 2446, 2014 WL 2481906, at *11 (S.D.N.Y. June 3, 2014); *cf. McGraw-Hill Companies, Inc.*, 2013 WL 1874279, at *4. Because adjudication of Plaintiffs' claim does not require reference to or construction of federal law, Plaintiffs' case differs fundamentally from the cases invoked by Defendants.

Each of the four *Grable* elements must exist in order to establish that federal jurisdiction exists. *Gunn*, 133 S. Ct. at 1065. Because the first element is lacking, the remaining three elements need not be addressed and the case is not properly before this Court.[2]

---

[2] Similarly, Plaintiffs assert that "remand is appropriate for the additional and separate reason that Defendants did not timely file their removal petition." [Motion at 20]. The Court does not reach this argument in light of the above disposition.

## IV.  CONCLUSION

For the above reasons, the case is remanded to the Supreme Court of the State of New York. The Clerk of Court is directed to close the Motion at Docket No. 22 and to terminate the case.

SO ORDERED.

Dated:  August 4, 2014
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**